FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ APR 2 1 2010 ☆

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

LINDA COVERT and CHAD COVERT,

                Plaintiffs,

    -against-

THOMAS H. MILHORAT, M.D., PAOLO A.
BOLOGNESE, M.D., MISAO NISHIKAWA, M.D.,
L. THIERRY REMY, M.D., CHANLAND
ROONPRAPUNT, M.D., JOHN XI CHEN, M.D,
NORTH SHORE – LONG ISLAND JEWISH
HEALTH SYSTEM, INC. , THE CHIARI
INSTITUTE, an unincorporated entity of North
Shore University Hospital and HARVEY CUSHING
INSTITUTES OF NEUROSCIENCE, an
unincorporated entity of North Shore University
Hospital,

                Defendants.
-----------------------------------------------------------------X

Civil Action No.:

**COMPLAINT AND
DEMAND FOR
JURY TRIAL**

10  1769

BIANCO, J.

LINDSAY, M.J.

    Plaintiffs, **LINDA COVERT and CHAD COVERT,** by their attorneys, **GOLDSMITH**

**CTORIDES & RODRIGUEZ, L.L.P.** and **THE LOCKS LAW FIRM, P.L.L.C.,** as and for

their Complaint against the Defendants allege, upon information and belief, as follows:

## PRELIMINARY STATEMENT

    1.     This case arises out of medical care and treatment received by the Plaintiff,

**LINDA COVERT,** at **THE CHIARI INSTITUTE, NORTH SHORE – LONG ISLAND**

**JEWISH HEALTH SYSTEM, INC.** and the **HARVEY CUSHING INSTITUTES OF**

**NEUROSCIENCE** from Defendants **THOMAS H. MILHORAT, M.D., PAOLO A.**

**BOLOGNESE M.D., MISAO NISHIKAWA, M.D., L. THIERRY REMY, M.D.,**

**CHANLAND ROONPRAPUNT, M.D., and JOHN XI CHEN, M.D.,** between April, 2008

and December, 2008.

    2.     The Defendants falsely advised the Plaintiff, LINDA COVERT, that she was

suffering from tethered cord syndrome, which was contributing to and causing an elongation of

the brain, downward displacement of the medulla and that she required surgery on the tethered cord to treat these conditions.

3. The Defendants thereafter recommended and performed surgery upon Plaintiff, LINDA COVERT, without advising her that said surgery was unnecessary and experimental and that she was being used as a human research subject. Specifically, on May 9, 2008 Defendants, THOMAS H. MILHORAT, M.D., PAOLO A. BOLOGNESE M.D., L. THIERRY REMY, M.D., and CHANLAND ROONPRAPUNT, M.D., performed spinal cord untethering surgery upon the Plaintiff on the premises of Defendant, NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC., without advising her that the untethering surgery was unnecessary and experimental to the extent that it was not a scientifically accepted method for treating elongation of the brain stem, downward displacement of the medulla and Chiari Malformation. The safety and efficacy of said "untethering" surgery as a treatment for said conditions has never been proven by any published peer-reviewed medical or scientific study.

4. Tethered cord surgery (sectioning of the filum terminale) was not and is not an acceptable scientifically supportable treatment for elongation of the brain stem, downward displacement of the medulla and Chiari I Malformation.

5. Tethered cord surgery (sectioning of the filum terminale) was and is considered an experimental treatment for Chiari I Malformation, elongation of the brain stem and downward displacement of the medulla.

6. Defendants recommended and performed the tethered cord surgery solely for their financial gain. Defendants utilized the Plaintiff, LINDA COVERT, as a human research subject without her consent, solely for financial gain. The tethered cord surgery did not improve the Plaintiff, LINDA COVERT's Chiari symptoms. To the contrary, the Plaintiff has been caused to

2

suffer irreversible damages that will impact the rest of her life, including but not limited to severe lower back pain and pressure and spinal instability.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 based upon the diversity of citizenship of the Plaintiffs and the Defendants and since this action seeks damages in excess of SEVENTY FIVE THOUSAND ($75,000.00) DOLLARS, exclusive of interest and costs.

8.    Venue is proper in this district pursuant to 28 U.S.C. 1391(a).

## THE PARTIES

9.    At all times hereinafter mentioned, Plaintiff, **LINDA COVERT**, resided in the City of Pocatello, County of Bannock, State of Idaho.

10.    At all times hereinafter mentioned, Plaintiff, **CHAD COVERT**, resided in the City of Pocatello, County of Bannock, State of Idaho.

11.    At all times hereinafter mentioned, THOMAS H. MILHORAT, M.D. (hereinafter referred to as "**MILHORAT**"), was and is a physician duly licensed to practice medicine in the State of New York and a citizen of the State of New York, practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021.

12.    At all times hereinafter mentioned, Defendant, MILHORAT, held himself out to the public as a specialist in the area of neurosurgery.

13.    At all times hereinafter mentioned, PAOLO A. BOLOGNESE, M.D. (hereinafter referred to as "**BOLOGNESE**"), was and is a physician duly licensed to practice medicine in the State of New York and a citizen of the State of New York, practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021.

3

14.     At all times hereinafter mentioned, Defendant, BOLOGNESE, held himself out to the public as a specialist in the area of neurosurgery.

15.     At all times hereinafter mentioned, MISAO NISHIKAWA, M.D., (hereinafter referred to as "**NISHIKAWA**"), was and is an unlicensed physician, practicing medicine without a license in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021.

16.     At all times hereinafter mentioned, Defendant, NISHIKAWA, held himself out to the public as a specialist in the area of pathophysiology.

17.     At all times hereinafter mentioned, Defendants, MILHORAT, BOLOGNESE, L. THIERRY REMY, M.D., CHANLAND ROONPRAPUNT, M.D., JOHN XI CHEN, M.D., NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC., THE CHIARI INSTITUTE and HARVEY CUSHING INSTITUTES OF NEUROSCIENCE knew or should have known that Defendant, NISHIKAWA was and is an unlicensed physician, practicing medicine without a license in Nassau Country, at 865 Northern Boulevard, Great Neck, New York 11021.

18.     At all times hereinafter mentioned, Defendants, MILHORAT, BOLOGNESE, L. THIERRY REMY, M.D., CHANLAND ROONPRAPUNT, M.D., JOHN XI CHEN, M.D., NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC., THE CHIARI INSTITUTE and HARVEY CUSHING INSTITUTES OF NEUROSCIENCE held Defendant, NISHIKAWA out as a physician licensed to practice medicine in the State of New York and the world's leading expert on morphometrics.

19.     At all times hereinafter mentioned, L. THIERRY REMY, M.D. (hereinafter referred to as "**REMY**"), was and is a physician duly licensed to practice medicine in the State of New York and a citizen of the State of New York, practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021.

4

20. At all times hereinafter mentioned, Defendant, REMY, held himself out to the public as a specialist in the area of neurosurgery.

21. At all times hereinafter mentioned, CHANLAND ROONPRAPUNT, M.D. (hereinafter referred to as "**ROONPRAPUNT**"), was and is a physician duly licensed to practice medicine in the State of New York and a citizen of the State of New York, previously practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021, and currently practicing medicine in New York County, at 1000 Tenth Avenue, Suite 5G-80, New York, NY 10019.

22. At all times hereinafter mentioned, Defendant, ROONPRAPUNT, held himself out to the public as a specialist in the area of neurosurgery.

23. At all times hereinafter mentioned, JOHN XI CHEN, M.D. (hereinafter referred to as "**CHEN**"), was and is a physician duly licensed to practice medicine in the State of New York and a citizen of the State of New York, previously practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021, and currently practicing medicine at 1275 York Avenue, New York, New York 10065.

24. At all times hereinafter mentioned, Defendant, CHEN, held himself out to the public as a specialist in the area of neurology.

25. At all times hereinafter mentioned, Defendant, NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC. (hereinafter referred to as "**NORTH SHORE - LIJ**"), was and is a corporation duly organized and existing under the laws of the State of New York.

26. At all times hereinafter mentioned, Defendant, NORTH SHORE - LIJ, by its agents, servants and employees, controlled, managed and operated the hospital located at 300

Community Drive, Manhasset, New York 11030, in the State of New York, County of Nassau, for the care and treatment of persons afflicted with illness and disease.

27.    At all times hereinafter mentioned, THE CHIARI INSTITUTE (hereinafter referred to as "**TCI**"), was and is an unincorporated entity of North Shore University Hospital, located at 865 Northern Boulevard, Great Neck, New York 11021.

28.    At all times hereinafter mentioned, the Defendant, TCI, was and is owned, controlled, managed and operated by Defendant, NORTH SHORE – LIJ.

29.    At all times hereinafter mentioned, the Defendant, TCI, was and is controlled, managed and operated by the Board of Directors of Defendant, NORTH SHORE – LIJ.

30.    At all times hereinafter mentioned, HARVEY CUSHING INSTITUTES FOR NEUROSCIENCE (hereinafter referred to as "**HARVEY CUSHING**"), was and is an unincorporated entity of North Shore University Hospital, located at 865 Northern Boulevard, Great Neck, New York 11021.

31.    At all times hereinafter mentioned, the Defendant, HARVEY CUSHING, was and is owned, controlled, managed and operated by Defendant, NORTH SHORE – LIJ.

32.    At all times hereinafter mentioned, the Defendant, HARVEY CUSHING, was and is controlled, managed and operated by the Board of Directors of Defendant, NORTH SHORE – LIJ.

33.    At all times hereinafter mentioned, Defendant, NORTH SHORE – LIJ and its Board of Directors, were responsible for the medical care rendered and the medical research being performed at Defendant, TCI.

34.    At all times hereinafter mentioned, Defendant, NORTH SHORE – LIJ and its Board of Directors, were responsible for the medical care rendered and the medical research being performed at Defendant, HARVEY CUSHING.

35. At all times hereinafter mentioned, Defendant, MILHORAT, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

36. At all times hereinafter mentioned, Defendant, MILHORAT, was a private attending physician with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

37. At all times hereinafter mentioned, Defendant, MILHORAT, was the Chief of Neurosurgery at Defendant, NORTH SHORE – LIJ.

38. At all times hereinafter mentioned, Defendant, MILHORAT, was an agent, servant and/or employee of Defendant, TCI.

39. At all times hereinafter mentioned, Defendant, MILHORAT, was the Director of Defendant, TCI, and was responsible for overseeing the medical care rendered and the medical research being performed at said facility.

40. At all times hereinafter mentioned, Defendant, MILHORAT, was the Director of Defendant, HARVEY CUSHING, and was responsible for overseeing the medical care rendered and the medical research being performed at said facility.

41. At all times hereinafter mentioned, Defendant, MILHORAT, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

42. At all times hereinafter mentioned, Defendant, BOLOGNESE, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

43. At all times herein mentioned, Defendant, BOLOGNESE, was an attending physician with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

44. At all times hereinafter mentioned, Defendant BOLOGNESE was not, and is not board certified in neurosurgery, or in any area of medicine.

45. At all times hereinafter mentioned, Defendant, BOLOGNESE, was an agent, servant and/or employee of Defendant, TCI.

7

46.     At all times hereinafter mentioned, Defendant, BOLOGNESE, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

47.     At all times hereinafter mentioned, Defendant, BOLOGNESE, was the Assistant Director of TCI, and was responsible for overseeing the medical care rendered and the medical research being performed at said facility.

48.     At all times hereinafter mentioned, Defendant, BOLOGNESE, was the Assistant Director of HARVEY CUSHING, and was responsible for overseeing the medical care rendered and the medical research being performed at said facility.

49.     At all times hereinafter mentioned, Defendant, NISHIKAWA, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

50.     At all times hereinafter mentioned, Defendant NISHIKAWA, was an agent, servant and/or employee of Defendant, TCI.

51.     At all times hereinafter mentioned, Defendant, NISHIKAWA, was not a resident at Defendant, NORTH SHORE – LIJ.

52.     At all times hereinafter mentioned, Defendant, NISHIKAWA, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

53.     At all times hereinafter mentioned, Defendant, REMY, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

54.     At all times hereinafter mentioned, Defendant, REMY, was a neurosurgical fellow with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

55.     At all times hereinafter mentioned, Defendant, REMY, was an agent, servant and/or employee of Defendant, TCI.

56.     At all times hereinafter mentioned, Defendant, REMY, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

8

57.     At all times hereinafter mentioned, Defendant, ROONPRAPUNT, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

58.     At all times hereinafter mentioned, Defendant, ROONPRAPUNT, was an attending physician with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

59.     At all times hereinafter mentioned, Defendant, ROONPRAPUNT, was an agent, servant and/or employee of Defendant, TCI.

60.     At all times hereinafter mentioned, Defendant, ROONPRAPUNT, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

61.     At all times hereinafter mentioned, Defendant, CHEN, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

62.     At all times hereinafter mentioned, Defendant, CHEN, was an attending physician with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

63.     At all times hereinafter mentioned, Defendant, CHEN, was an agent, servant and/or employee of Defendant, TCI.

64.     At all times hereinafter mentioned, Defendant, CHEN, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

## FACTUAL SUMMARY

65.     Plaintiff, **LINDA COVERT**, was born in 1956.

66.     The Plaintiff, Linda Covert was initially diagnosed with Chiari Malformation in 1973 and underwent surgery in 1974 for said condition by Dr. F.W. Elwood.

67.     Chiari Malformation is a condition in which brain tissue protrudes into the spinal canal. There are several different forms of Chiari Malformation. The most common type is the Chiari I Malformation. In normal anatomy, the cerebellar tonsils are located just above the level

of the foramen magnum. In an individual with Chiari I, the tonsils hang below the level of the foramen magnum into the spinal canal.

68.   In or about February, 2008, the Plaintiff, LINDA COVERT, conducted an internet search on Chiari Malformation during which they found and reviewed the website of the Defendant, The Chiari Institute, a Division of North Shore – Long Island Jewish Medical Health System, Inc., and as a result of the contents of and representations contained on said website, went to said facility for an evaluation.

69.   That the Defendant, The Chiari Institute, a Division of North Shore – Long Island Jewish Medical Health System, Inc., caused a website to be created, managed, and operated to, *inter alia*, set forth content for and make representations to consumers of medical services in New York State and throughout the United States.

70.   The website of TCI advertises to the public that the physicians at said facility have expertise in the treatment of Chiari Malformations and in the performance of surgeries to treat Chiari Malformation, and other related conditions.  In addition, the website advertises to the public that the physicians at said facility have expertise in performing revision surgeries for patients whose prior surgeries have not resolved their symptoms.

71.   The website of TCI advertises to the public that "the neurosurgeons of The Chiari Institute have made major contributions to the basic sciences of Chiari Malformation (CM) and syringomyelia". Upon information and belief, Defendants knew such statement was false.

72.   The website of TCI advertises to the public that it carries out "research projects" supported by a $17.5 million dollar grant from the National Institutes of Health (NIH).

73.   The NIH grant advertised on TCI's website does not exist.  Upon information and belief, Defendants knew that the NIH grant advertised on TCI's website does not exist.

74. The website of the Defendant, TCI, posts a video presentation by Defendant, BOLOGNESE, entitled: "Tethered Cord Syndrome."

75. The video presentation by Defendant, BOLOGNESE, contains knowingly false and misleading information regarding tethered cord syndrome.

76. Defendant, BOLOGNESE, states on said video presentation that when the filum terminale becomes too thick and too tense it creates a downward pull on the spinal cord, thereby causing and contributing to Chiari Malformation and tonsillar herniation without informing the public that there are no scientific studies or peer reviewed medical literature, supporting this conclusion.

77. Upon information and belief, Defendant, BOLOGNESE, knew that there are no scientific studies or peer reviewed medical literature supporting this conclusion.

78. Defendant, BOLOGNESE, claims in the video presentation that Defendant, TCI, has developed the "TCI Special," a system for diagnosing tethered cord syndrome by utilizing clinical data, radiologic studies, stimulation tests and morphometrics.

79. Defendant, BOLOGNESE, fails to inform the public that the concept of morphometrics as it relates to tethered cord syndrome is a diagnostic tool developed by Defendant, NISHIKAWA, an employee of Defendant, TCI, who is not licensed to practice medicine in the State of New York. Upon information and belief, Defendant, BOLOGNESE, knew that Defendant, NISHIKAWA, was not licensed to practice medicine in the State of New York.

80. Defendant, BOLOGNESE, fails to inform the public in the video presentation that the concept of morphometrics has not been widely studied or written about in the scientific or peer reviewed medical literature as it relates to tethered cord syndrome. Upon information and belief, Defendant, BOLOGNESE, knew that the concept of morphometrics has not been widely

studied or written about in the scientific or peer reviewed medical literature as it relates to tethered cord syndrome.

81. Defendant, BOLOGNESE, on said video presentation fails to advise the public that no scientific or medical proof exists proving that morphometrics is useful and efficacious in the diagnosis of tethered cord syndrome.

82. Upon information and belief, Defendant, BOLOGNESE, knew that no scientific or medical proof exists proving that morphometrics is useful and efficacious in the diagnosis of tethered cord syndrome.

83. Upon information and belief, Defendants, BOLOGNESE and MILHORAT, and the other physicians at Defendant, TCI, rely on Defendant, NISHIKAWA'S, interpretations of radiological studies in making the diagnosis of tethered cord syndrome, even though Defendant, NISHIKAWA, is not a physician licensed to practice medicine in the State of New York.

84. Defendant, BOLOGNESE, fails to inform the public on said video presentation that he and the other physicians at Defendant, TCI, rely on Defendant, NISHIKAWA'S, interpretations of radiological studies in making the diagnosis of tethered cord syndrome, even though Defendant, NISHIKAWA, is not a physician licensed to practice medicine in the State of New York.

85. The plaintiff, LINDA COVERT was initially seen at Defendant TCI, in or about April, 2008 with complaints of "brain fog," neck pain radiating to the shoulders, back, arms and hands, diminished vision, and other related symptoms.

86. The Plaintiff, LINDA COVERT, was evaluated at Defendant TCI, by the Defendant physicians who diagnosed her as having tethered cord syndrome, elongation of the brain stem, downward displacement of the medulla and enlargement of the foramen magnum.

87.     Defendant, NISHIKAWA, performed morphometric interpretations on the Plaintiff, LINDA COVERT's radiological studies to make a diagnosis of tethered cord syndrome and elongation of the of the brain stem and downward displacement of the medulla, while he was physically present in the State of New York, even though he was not a physician licensed to practice medicine in the State of New York.

88.     Other Defendant physicians relied, in part, upon Defendant, NISHIKAWA's interpretations of the Plaintiff, LINDA COVERT's radiological studies and his diagnosis of tethered cord syndrome and elongation and downward displacement of the brain stem, to develop a plan of care and treatment for the Plaintiff, LINDA COVERT.

89.     Defendant, BOLOGNESE, advised the Plaintiff, LINDA COVERT, that the tethered cord syndrome was causing the elongation and downward displacement of the brain stem which in turn was causing her symptoms.

90.     The Defendants, through their deceptive advertising on their website and lecture presentation materials available on the internet, and through the deceptive direct statements made to the Plaintiff, LINDA COVERT, misled the Plaintiff into believing that the tethered cord surgery was to be performed to treat the Plaintiff, LINDA COVERT's Chiari symptoms. Upon information and belief, Defendants knew such statement was false.

91.     The Defendants misled the Plaintiff into believing that the tethered cord surgery would cure the elongation of the brain stem and downward displacement of the brain stem, which she allegedly had, and this in turn would cure her presenting symptoms.

92.     The Defendants misled the Plaintiff through their deceptive advertising on their website and lecture presentation materials available on the internet, and through the deceptive direct statements made to the Plaintiff, LINDA COVERT, into believing that the tethered cord surgery was necessary and indicated because it would treat the elongation and downward

displacement of the brain stem, which she allegedly had, and which conditions were allegedly causing her "brain fog", neck pain radiating to the shoulders, back, arms and hands and diminished vision.  Upon information and belief, Defendants knew such statements were false.

93.     The Defendants, through their deceptive advertising on their website and lecture presentation materials available on the internet, and through the deceptive direct statements made to the Plaintiff, LINDA COVERT, represented to Plaintiff, LINDA COVERT, that by not having the tethered cord surgery, the tethered cord would start to pull more and more, causing a worsening of the elongation of the brain stem, downward displacement of the medulla and Chiari Malformation and Chiari related symptoms.  Upon information and belief, Defendants knew such statement was false.

94.     The Defendants represented to Plaintiff, LINDA COVERT, that tethered cord surgery was a very safe procedure and rarely leads to complications.  Upon information and belief, Defendants knew such statement was false.

95.     The Defendants failed to advise Plaintiff, LINDA COVERT, that the subject of tethered cord surgery as a treatment for Chiari Malformation is highly controversial in the field of neurosurgery.  Upon information and belief, Defendants knew that the subject of tethered cord surgery as a treatment for Chiari Malformation is highly controversial in the field of neurosurgery.

96.     The Defendants' representations misled the Plaintiff into believing that the tethered cord surgery would lead to an improvement of the Plaintiff, LINDA COVERT'S, symptoms which "brain fog", neck pain radiating to her shoulders, back and arms, diminished vision, numbness in her hands and feet and poor coordination.  Upon information and belief, Defendants knew that these representations were false.

14

97. The Defendants did not advise the Plaintiff that tethered cord surgery has not been widely studied in the scientific and medical community as a treatment for Chiari Malformation, and that no proof exists that tethered cord surgery is an effective treatment for Chiari Malformation and/or elongation of the brain stem and/or downward displacement of the medulla and/or Chiari related symptoms.

98. The Defendants did not advise the Plaintiff that there were no published peer reviewed medical studies in existence establishing that tethered cord surgery is a scientifically accepted and efficacious treatment for Chiari I Malformation and/or elongation of the brain stem and downward displacement of the medulla.

99. That Defendants did not advise the Plaintiff that articles written by physicians associated with Defendant, TCI, on the topic of tethered cord surgery as a treatment for Chiari I Malformation had been submitted for publication, but had been rejected by peer reviewed medical journals.

100. The Plaintiff, LINDA COVERT, underwent surgery to fix her alleged tethered cord on May 9, 2008 at Defendant, NORTH SHORE – LIJ, which was performed by Defendants MILHORAT, BOLOGNESE, REMY, and ROONPRAPUNT

101. Defendant, MILHORAT, acted as the primary surgeon and was assisted during the procedure by Defendants, BOLOGNESE, REMY and ROONPRAPUNT.

102. The Plaintiff, LINDA COVERT's, condition significantly worsened following the performance of the tethered cord surgery.

103. The Plaintiff, LINDA COVERT, developed significant injuries following the performance of the tethered cord surgery, including but not limited to chronic lower back pain and pressure which radiates into her legs, and spinal instability.

15

104. The Defendants induced the Plaintiff, LINDA COVERT, into having experimental tethered cord surgery, solely for their financial gain, full well knowing that there is no scientific or medical proof that tethered cord surgery provides any real improvement of a patient's Chiari Malformation and/or elongation and downward displacement of the brain stem and/or persistent tonsillar herniation and/or Chiari related symptoms.

105. The Defendant, BOLOGNESE, presented a lecture at the meeting of the Association of Syringomylia held in July, 2008, in Arlington, Virginia, which is available on the internet wherein he stated that a prospective study in tethered cord surgery was being performed at Defendant, TCI.

106. The Defendants, performed experimental surgery upon the Plaintiff, without advising the Plaintiff that the surgery was experimental in nature, as it related to the treatment of her Chiari Malformation and Chiari related symptoms, or that her case would be studied and included in a nationwide study that was being performed on a condition known as Ehlers Danlos Syndrome, which the Defendants claimed was connected to Tethered Cord Syndrome.

107. Upon information and belief, without the Plaintiff's consent, pathologic studies were performed upon specimens removed from the Plaintiff's body during the unnecessary Tethered Cord Surgery, solely for purposes of gathering information for the various studies being conducted at Defendant, TCI.

108. The Defendants neither advised the Plaintiff about the experimental nature of the surgery, nor did the Defendants ask the Plaintiff to sign a consent form of the type that would be required for participation in human experimentation.

109. The Plaintiff, LINDA COVERT, now suffers from significant injuries arising from the performance of the unnecessary and medically useless surgery performed by Defendants, MILHORAT and BOLOGNESE, at Defendant, NORTH SHORE – LIJ, on May 9,

16

2008, including but not limited to chronic lower back pain and pressure radiating into her legs and spinal instability.

110. In addition to suffering physical and emotional injuries, the Plaintiff has been caused to suffer financially as a result of having the unnecessary surgery recommended by the Defendants, including but not limited to, having to expend monies not covered by insurance, such as the initial consultation fee charged by Defendants.

111. The Plaintiff was covered by medical insurance at the time of her treatment by the Defendants.

112. The Defendants charged the Plaintiff in excess of $50,000.00 for the unnecessary surgery they performed, and Plaintiff's health insurance carrier paid a portion of those charges.

113. The Plaintiff's health insurance carrier under an equitable or contractual right of subrogation or under ERISA will seek reimbursement from the Plaintiff if she recovers monetary damages from this case.

114. In the event that the Plaintiff recovers a monetary award from this case, she will be required to reimburse her health insurance carrier for the payments it has made to the Defendants and to her subsequent treating physicians who have treated her damages sustained in connection with the Defendants' malpractice.

115. The fact that the Plaintiff will need to repay monies to her health insurance carrier is a direct and proximate result of the Defendants' fraudulently recommending and performing unnecessary surgery upon her, while knowing that said surgery was unnecessary and useless.

## AS AND FOR A FIRST CAUSE OF ACTION

### (MEDICAL MALPRACTICE)

116.    That Plaintiff, **LINDA COVERT**, came under the care of the Defendants, **MILHORAT, BOLOGNESE, NISHIKAWA, REMY, ROONPRAPUNT, CHEN, TCI, HARVEY CUSHING and NORTH SHORE - LIJ**, in or about February, 2008.

117.    That the Plaintiff, **LINDA COVERT**, received pre-operative and post-operative treatment from Defendants, **MILHORAT, BOLOGNESE, NISHIKAWA, REMY, ROONPRAPUNT, CHEN, TCI, HARVEY CUSHING** and **NORTH SHORE – LIJ.**

118.    That the Defendants, MILHORAT, BOLOGNESE, REMY, ROONPRAPUNT, NORTH SHORE – LIJ, TCI and HARVEY CUSHING, performed surgery upon Plaintiff, LINDA COVERT, on May 9, 2008.

119.    That Defendant, NISHIKAWA, reviewed the Plaintiff, LINDA COVERT's MRI's and other radiological studies and helped formulate the Plaintiff's diagnosis of tethered cord syndrome and plan of care and treatment.

120.    That the Plaintiff, LINDA COVERT, continued to receive care from each of these Defendants until approximately September, 2008.

121.    At all times herein mentioned, the Defendants had a duty to use reasonable and proper care in their efforts to care for, treat and medicate said Plaintiff.

122.    That the Defendant, NORTH SHORE – LIJ, in rendering services to the Plaintiff, owed her the duty to use the degree of care, skill and diligence used by hospitals generally in the community.

123.    That the Defendants, jointly and severally, acting by themselves and through their agents, failed to use due, reasonable and proper care in treating the Plaintiff and deviated from accepted standards of medical care prevailing in the area of neurology, neurosurgery and

osteopathy, and the Defendants failed to exercise the knowledge, skill and diligence, which as physicians they should have possessed and exercised on behalf of the Plaintiff, and were otherwise careless and negligent.

124. That as a result of the foregoing, the Plaintiff, LINDA COVERT, has sustained serious, severe and irreversible personal injuries, and pain and suffering.

125. That solely as a result of the aforesaid injuries due to the improper care and treatment on the part of the Defendants, the Plaintiff, LINDA COVERT, has been subjected to repeated medical therapy, examinations, tests, medications, hospitalizations, and other care, and the Plaintiff, LINDA COVERT, will continue to require such further treatment in the future.

126. That the Plaintiff, LINDA COVERT, has sustained the injuries and damages set forth solely by reason of the carelessness, negligence and lack of skill of the Defendants, without any negligence or carelessness on the part of Plaintiff, LINDA COVERT.

127. That the Plaintiff, LINDA COVERT, is entitled to monetary damages stemming from this cause of action in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

## AS AND FOR A SECOND CAUSE OF ACTION

### (LACK OF INFORMED CONSENT)

128. Plaintiff, **LINDA COVERT,** repeats and realleges each and every allegation contained in Paragraphs numbered "1" through "127", inclusive, of this Verified Complaint, with the same force and effect as if set forth herein at length.

129. The Defendants were under a duty and obligation to advise and inform the Plaintiff, LINDA COVERT, of inherent dangers, risks, and consequences of the medical treatment and procedures recommended by the Defendants, and that the Defendants failed, neglected, and/or refused to advise, inform, notify the Plaintiff, LINDA COVERT, of the

apparent risk and possible complications and dangers which might result in the aforesaid procedures and/or treatment recommended.

130.    Defendants failed, neglected, and/or refused to inform, advise, notify, and counsel the Plaintiff, LINDA COVERT, of the possible inherent dangers and risks of said procedures and treatment recommended and performed, and failed to advise and inform the Plaintiff, LINDA COVERT, of any other method of treatment which might have been used to alleviate the condition from which the Plaintiff, LINDA COVERT, was suffering.

131.    Said failure to advise, inform, notify, and counsel the Plaintiff, LINDA COVERT, did not afford her adequate knowledge and information so as to determine whether or not she should submit to the aforesaid treatment and, therefore, the Plaintiff, LINDA COVERT, did not give her informed consent, based upon adequate knowledge of the risks and dangers of the procedures; but rather, consented based upon information which was inadequate and insufficient upon which to base a decision to submit to the said procedure.

132.    By reason of the aforesaid, the treatment given herein was not based upon adequate and sufficient knowledge or informed consent.

133.    Plaintiff, LINDA COVERT, has sustained the injuries and damages, as set forth, solely by reason of the carelessness, negligence, and unskillfulness of the Defendants, and each of them, without negligence or carelessness on her part contributing thereto.

134.    That the Plaintiff, LINDA COVERT, is entitled to monetary damages stemming from this cause of action in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

## AS AND FOR A THIRD CAUSE OF ACTION

### (FRAUD)

135.   The Plaintiff, **LINDA COVERT,** repeats and realleges each and every allegation contained in Paragraphs numbered **"1"** through **"134"**, inclusive, of this Verified Compliant, with the same force and effects as if set forth herein at length.

136.   That on or about May 9, 2008, Plaintiff, LINDA COVERT, had surgery at NORTH SHORE – LIJ, performed by Defendants, MILHORAT, BOLOGNESE, and REMY.

137.   That Plaintiff, LINDA COVERT, was fraudulently induced into having surgery on May 9, 2008 by Defendants, MILHORAT, BOLOGNESE, NISHIKAWA, REMY, ROONPRAPUNT, CHEN, TCI, HARVEY CUSHING and NORTH SHORE – LIJ.

138.   That the Defendants falsely advised the Plaintiff that her symptoms of "brain fog", neck pain radiating to shoulders, back, arms and hands, diminished vision, numbness in hands and feet and poor coordination were being caused by tethered cord syndrome, and that said Defendants knew these statements were false when made.

139.   That the Defendants falsely advised the Plaintiff that she was suffering from tethered cord syndrome, and that said Defendants knew these statements were false when made.

140.   That the Defendants falsely advised the Plaintiff that she needed tethered cord surgery, and that said Defendants knew these statements were false when made.

141.   The Defendants falsely advised the Plaintiff that she allegedly had an elongation of the brain stem which they claimed was a sign of tethered cord syndrome, and that said Defendants knew these statements were false when made.

142.   That the Defendants falsely advised the Plaintiff that by undergoing tethered cord surgery, she would see an improvement of her symptoms which included "brain fog", and neck

21

pain radiating to her shoulder, back, arms and hands, poor coordination and numbness in the hand and feet.

143. That the Defendants falsely advised the Plaintiff that if she did not undergo tethered cord surgery her symptoms would never improve, and that said Defendants knew these statements were false when made.

144. That the Defendants falsely advised the Plaintiff that she needed to undergo tethered cord surgery, so that the elongation and downward displacement of the medulla of the brain stem would not get worse and that said Defendants knew these statements were false when made.

145. That the Defendants falsely advised the Plaintiff that if she did not undergo tethered cord surgery, the tethered cord which she allegedly had, would continue pulling down on the brain stem causing a worsening of her symptoms. Defendants knew such statements were false when made.

146. That these representations were falsely made, and in truth there was no published medical or scientific proof that Chiari symptoms or Chiari I malformation and/or elongation and downward displacement of the brain stem and/or downward displacement of the medulla can be improved through the performance of tethered cord surgery.

147. That in fact, the Defendants failed to inform the Plaintiff that tethered cord surgery can adversely affect the patient.

148. That the Defendants fraudulently advised the Plaintiff on their website that Defendants, TCI and HARVEY CUSHING are supported by a $17.5 million dollar grant from the NIH which in fact, does not exist.

149. That Defendant, BOLOGNESE, in the video presentation entitled "Tethered Cord Syndrome" posted on Defendant, TCI's, website, knowingly and with intent to deceive, advised

the public that the Defendants had developed the "TCI Special," a diagnostic system enabling them to diagnose tethered cord syndrome through the evaluation of clinical, radiological and stimulation data, and morphometrics.

150.    That Defendant, BOLOGNESE, in the video presentation entitled "Tethered Cord Syndrome" posted on Defendant, TCI's, website, knowingly and with intent to deceive failed to advise the public that the use of morphometrics in the diagnosis of tethered cord syndrome, is a concept developed by Defendant, NISHIKAWA, an employee of Defendant, TCI, who is an unlicensed physician in the State of New York.

151.    That Defendant, BOLOGNESE, in the video presentation entitled: "Tethered Cord Syndrome" posted on Defendant, TCI's, website, knowingly and with intent to deceive failed to advise the public that morphometrics has not been accepted as a standard diagnostic tool for tethered cord syndrome.

152.    That Defendant BOLOGNESE in the video presentation entitled "Tethered Cord Syndrome" posted on Defendant TCI's website knowingly and with intent to deceive failed to advise the public that there are no scientific studies or peer reviewed medical literature in existence demonstrating that morphometrics is useful and efficacious in the diagnosis of tethered cord syndrome.

153.    That Defendant, BOLOGNESE, knowingly and with intent to deceive failed to advise the public in the video presentation on Tethered Cord Syndrome posted on Defendant, TCI's, website, that he and Defendant, MILHORAT and the other physicians at Defendant, TCI, relied upon Defendant, NISHIKAWA'S, interpretation of various radiological studies, and his morphometric calculations, in making the diagnosis of tethered cord syndrome, even though Defendant, NISHIKAWA, was not, and is not, a licensed medical doctor in the State of New York.

154.    That the Defendants knowingly and with intent to deceive, failed to advise the Plaintiff, LINDA COVERT, that Defendant, NISHIKAWA, performed morphometric calculations on her MRI's and other radiological studies and helped formulate the diagnosis of tethered cord syndrome and her plan of care and treatment while in the State of New York, even though he was not a physician licensed to practice medicine in the State of New York.

155.    That the Defendant physicians knowingly and with intent to deceive, failed to advise the Plaintiff that the Defendant physicians relied upon Defendant, NISHIKAWA's morphometric interpretations in making her diagnosis of tethered cord syndrome and in formulating the Plaintiff's plan of care even though Defendant, NISHIKAWA was not a licensed physician in the State of New York.

156.    That after the Plaintiff, LINDA COVERT, complained that the tethered cord surgery did not resolve her symptoms, the Defendants recommended that she undergo unnecessary invasive cervical traction.

157.    That the Defendants jointly and severally recommended the tethered cord surgery solely for their own financial gain, knowing full well that there was no scientific proof that the tethered cord surgery would be of any benefit to the Plaintiff.

158.    That as a result of the knowingly false representations made by the Defendants, the Plaintiff, LINDA COVERT, was fraudulently induced into having tethered cord surgery on May 9, 2008.

159.    That the Plaintiff, LINDA COVERT, detrimentally relied on the fraudulent information provided by the Defendants as set forth in the paragraphs above, and agreed to have tethered cord surgery, which was performed by the Defendants on May 9, 2008.

160.    In addition to suffering physical and emotional injuries, the Plaintiff has been caused to suffer financially as a result of having the unnecessary surgery and treatments

24

recommended by the Defendants, including but not limited to, having to expend monies for medical expenses not covered by insurance, such as the initial consultation fee charged by Defendants.

161. The Plaintiff was covered by medical insurance at the time of her treatment by the Defendants.

162. The Defendants charged the Plaintiff in excess of $50,000.00 for the unnecessary surgery they performed, and Plaintiff's health insurance carrier paid a portion of those charges.

163. The Plaintiff's health insurance carrier under an equitable or contractual right of subrogation or under ERISA will seek reimbursement from the Plaintiff if she recovers monetary damages from this case.

164. In the event that the Plaintiff recovers a monetary award from this case, she will be required to reimburse her health insurance carrier for the payments it has made to the Defendants and to her subsequent treating physicians who have treated her damages sustained in connection with the Defendants' malpractice.

165. As a result of the fraud perpetrated by the Defendants upon the Plaintiff, LINDA COVERT, she is entitled to punitive damages.

166. Accordingly, the Plaintiff, LINDA COVERT has suffered compensatory and punitive damages in an amount exceeding TEN MILLION ($10,000,000.00) DOLLARS.

### AS AND FOR A FOURTH CAUSE OF ACTION

(VIOLATION OF NYS GBL SECTIONS 349 and 350)

167. The Plaintiff, **LINDA COVERT**, repeats and realleges each and every allegation contained in Paragraphs numbered **"1"** through **"166"**, inclusive of this Verified Complaint, with the same force and effect as if set forth herein at length.

25

168. That the Plaintiff, LINDA COVERT, was a consumer of medical services provided by Defendants in the State of New York.

169. That the making and dissemination of the representations by the Defendants to Plaintiff, LINDA COVERT, as well as other consumers throughout the United States, as outlined in Paragraphs 65-115 were material and constitute deceptive business practices and acts and false advertising in violation of New York State General Business Law Sections 349 and 350.

170. Through their aforementioned conduct, Defendants, MILHORAT, BOLOGNESE, REMY, ROONPRAPUNT, NISHIKAWA, CHEN, NORTH SHORE - LIJ, TCI and HARVEY CUSHING, aided and abetted one another and violated N.Y.S. General Business Law Sections 349 and 350.

171. The Plaintiff, LINDA COVERT, was injured and sustained injuries as a result of the Defendants false business practices and false advertising, in that she was induced into having surgery, that not only failed to improve her symptoms, but made her medical condition worse, to the extent that she will suffer from chronic back pain and spinal instability that she sustained as a result of the surgery of May 9, 2008, for the rest of her life.

172. The Plaintiff, LINDA COVERT, seeks to recover actual compensatory damages for the injuries she sustained as a result of the Defendants' deceptive business practices, acts and false advertising.

173. The Plaintiff, LINDA COVERT, seeks to recover punitive damages and reasonable attorney's fees and costs as a result of the Defendants' deceptive business practices, acts and false advertising pursuant to the New York State G.B.L. Section 349 and 350.

174. That due to the Defendants deceptive business practices, the Plaintiff, LINDA COVERT, has been damaged in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

26

## AS AND FOR A FIFTH CAUSE OF ACTION

### (NEGLIGENT HIRING AND RETENTION)

175.   The Plaintiff, **LINDA COVERT**, repeats and realleges each and every allegation contained in Paragraphs **"1"** through **"174"**, inclusive of this Verified Complaint with the same force and effect as if set forth herein at length.

176.   That the Defendants, MILHORAT, BOLOGNESE, REMY, ROONPRAPUNT, CHEN and NISHIKAWA, were employees of Defendant, NORTH SHORE – LIJ.

177.   That the Defendant, NORTH SHORE – LIJ, owed the Plaintiff the duty to hire employees who were fit to treat the conditions she was suffering from.

178.   That the Defendants were unfit to render treatment to the Plaintiff, LINDA COVERT.

179.   That Defendant, NORTH SHORE – LIJ, should have known through the exercise of reasonable diligence, that the Defendants were unfit to practice medicine and dangerous and that said Defendants were performing unnecessary surgeries solely for financial gain, and should have further known that the Defendants were conducting human experimentation without having the proper consent.

180.   That there was a foreseeable risk of harm to the Plaintiff, LINDA COVERT.

181.   That Defendant, NORTH SHORE - LIJ's negligence in hiring and retaining the Defendants, MILHORAT, BOLOGNESE, ROONPRAPUNT, REMY, CHEN and NISHIKAWA, caused the Plaintiff to suffer severe and irreversible injuries from which she will suffer for the rest of her life.

182.   That due to the Defendants' negligent hiring and retention, the Plaintiff, LINDA COVERT, has been damaged in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

## AS AND FOR A SIXTH CAUSE OF ACTION

### (LOSS OF CONSORTIUM)

183. Plaintiff, LINDA COVERT, repeats and realleges each and every allegation contained in Paragraphs numbered "1" through "182", inclusive of this Verified Complaint, with the same force and effect as if set forth herein at length.

184. That the Plaintiff, CHAD COVERT, at all times hereinafter mentioned, was, and is, the spouse of the Plaintiff, LINDA COVERT.

185. That as a result of the aforementioned injuries sustained by the Plaintiff, LINDA COVERT, the Plaintiff, CHAD COVERT, has been caused to lose the comfort, society, companionship, and consortium of his spouse.

186. As a direct and proximate result of the aforementioned injuries, the Plaintiff, CHAD COVERT, has been monetarily damaged in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

**WHEREFORE**, the Plaintiffs, **LINDA COVERT and CHAD COVERT,** demand judgment against the Defendants

(a) on the FIRST CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS;

(b) on the SECOND CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS;

(c) on the THIRD CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS;

(d) on the FOURTH CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS;

(e)    on the FIFTH CAUSE OF ACTION in the sum of TEN MILLION

($10,000,000.00) DOLLARS;  and

(f)    on the SIXTH CAUSE OF ACTION in the sum of TEN MILLION

($10,000,000.00) DOLLARS;

together with costs, interest and disbursements of this action, and for such other and further relief

that this Court deems just and proper.

Dated: New York, New York
      April 20, 2010

                    **GOLDSMITH CTORIDES & RODRIGUEZ, L.L.P.**
                    Attorneys for Plaintiffs,
                    LINDA COVERT and CHAD COVERT

By:

                    LEE S. GOLDSMITH (LSG 8875)
                    CHRISTINA CTORIDES (CC 5271)
                    A Member of the Firm
                    Office & P.O. Address
                    747 Third Avenue, 37th Floor
                    New York, NY  10017
                    (212) 421-5500

                    and

                    **LOCKS LAW FIRM, PLLC**
                    **Co-Counsel for Plaintiffs**
                    STEVEN P. KNOWLTON
                    GENE LOCKS
                    JANET C. WALSH
                    ANDREW P. BELL
                    747 Third Avenue, 37th Floor
                    New York, NY  10017
                    212-838-3333

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

LINDA COVERT and CHAD COVERT,

                Plaintiffs,

     -against-

THOMAS H. MILHORAT, M.D., PAOLO A.
BOLOGNESE, M.D., MISAO NISHIKAWA, M.D.,
L. THIERRY REMY, M.D., CHANLAND
ROONPRAPUNT, M.D., JOHN XI CHEN, M.D,
NORTH SHORE – LONG ISLAND JEWISH
HEALTH SYSTEM, INC. , THE CHIARI
INSTITUTE, an unincorporated entity of North
Shore University Hospital and HARVEY CUSHING
INSTITUTES OF NEUROSCIENCE, an
unincorporated entity of North Shore University
Hospital,

                Defendants.
-----------------------------------------------------------------X

**Civil Action No.:**

**JURY DEMAND**

## **JURY DEMAND**

    **PLEASE TAKE NOTICE** that the Plaintiffs demand a trial by jury on all the issues herein.

Dated: New York, New York
      April 20, 2010

                    **GOLDSMITH CTORIDES & RODRIGUEZ, L.L.P.**
                    Attorneys for Plaintiffs

By:              
                LEE S. GOLDSMITH (LSG 8875)
                CHRISTINA CTORIDES (CC 5271)
                A Member of the Firm
                Office & P.O. Address
                747 Third Avenue, 37th Floor
                New York, NY  10017
                (212) 421-5500

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LINDA COVERT and CHAD COVERT,

               Plaintiffs,

    -against-

THOMAS H. MILHORAT, M.D., PAOLO A.
BOLOGNESE, M.D., MISAO NISHIKAWA, M.D.,
L. THIERRY REMY, M.D., CHANLAND
ROONPRAPUNT, M.D., JOHN XI CHEN, M.D,
NORTH SHORE – LONG ISLAND JEWISH
HEALTH SYSTEM, INC. , THE CHIARI
INSTITUTE, an unincorporated entity of North
Shore University Hospital and HARVEY CUSHING
INSTITUTES OF NEUROSCIENCE, an
unincorporated entity of North Shore University
Hospital,

               Defendants.
-------------------------------------------------------------------X

Civil Action No.:

**CERTIFICATE
OF MERIT**

STATE OF NEW JERSEY  )
                : ss.:
COUNTY OF BERGEN  )

    **Lee S. Goldsmith,** a member of the law firm of **GOLDSMITH, CTORIDES &**

**RODRIGUEZ, L.L.P.,** hereby affirms the truth of the following:

    That pursuant to the Rules of Civil Procedure §3012(a), the deponent states that he has

conferred with a physician who is a specialist in the field in which the Defendants practice

medicine and has been advised that sufficient basis exist for the commencement of this medical

malpractice suit.

                                        LEE S. GOLDSMITH

Sworn to before me this
20th of April, 2010.

Notary Public

KATHLEEN KATAN
Notary Public, State of New York
No. 01KA4735756
Qualified in Orange County
Commission Expires April 30, 20 //

31

STATE OF NEW JERSEY  )
                         : ss.:
COUNTY OF BERGEN  )

    **LEE S. GOLDSMITH**, being duly sworn, deposes and says:

    I am a member of the law firm of **GOLDSMITH, CTORIDES & RODRIGUEZ, L.L.P.**, attorneys for the Plaintiffs in the within action.  That I have read the foregoing Complaint and know the contents thereof; that the same is true, to my knowledge, except as to the within matters stated to be alleged upon information and belief, and that, as to those, I believe them to be true.  That the sources of my information are papers and records in Deponent's possession and file.  That the reason this Verification is made by your Deponent, and not by said Plaintiffs, are that the Plaintiffs do not reside within the County wherein your Deponent maintains her office.

                                                      **LEE S. GOLDSMITH**

Sworn to before me this
20th of April, 2010.

                                             KATHLEEN KATAN
                             Notary Public, State of New York
Notary Public                  No. 01KA4735756
                             Qualified in Orange County
                     Commission Expires April 30, 20/1